# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Yasmeen Al-Farouk, | Case No. 2:23-cv-01372-CDS-MDC |
| Plaintiff | **Order Granting Defendants' Motion to Dismiss** |
| v. | |
| Kristine Nelson, et al., | [ECF Nos. 25, 26, 33] |
| Defendants | |

Pro se plaintiff Yasmeen Al-Farouk's Second Amended Complaint (SAC) seeks damages from defendants Nevada, Nevada Department of Employment, Training and Rehabilitation (DETR) Security Division (ESD), and current DETR ESD Administrator Kristine Nelson, former DETR ESD Administrator Lynda Parven, DETR Director Christopher Sewell, DETR Board of Review Chairman Thomas Susich, DETR ESD Appeals Referee Jorge Ceballos,[1] Nevada "Attorney General/DETR ESD Attorney" Aaron Ford, "Deputy Attorney General/ DETR ESD Attorney" Todd M. Weiss, attorney Jen Sarafina, and Nevada Governor Joseph Lombardo, in their personal[2] capacities. SAC, ECF No. 9 at 1–3. Specifically, she brings a 42 U.S.C. § 1983 claim alleging that defendants denied her procedural due process when she sought Pandemic Unemployment Insurance (PUA) from DETR. *Id.* at 7. Defendants Nevada, DETR, Nelson, Parven, Ceballos, Susich, Sewell, Sarafina, Ford, Weiss, and Lombardo[3] filed a motion to dismiss Al-Farouk's claims. Mot. to dismiss, ECF No. 25 at 1–2. Defendants also list Deputy Attorney General Jordan K. Laub, who is representing defendants, as a party to the motion, although he

---

[1] Defendant Jorge Ceballos was added to the case after the filing of the motion to dismiss. ECF No. 31. Because the claims against him arise out of the same set of facts, his motion for joinder (ECF No. 33) to the other defendants' motion to dismiss (ECF No. 25) and request for judicial notice (ECF No. 26), as well as his waiver of service, is granted.

[2] Al-Farouk's claims against the individual defendants in their official capacities were already dismissed. Order on R&R, ECF No. 13 at 3–4.

[3] Although Weiss and Lombardo were not listed as parties to the motion to dismiss, the court notes that defendants filed a notice of errata (ECF No. 29) explaining that they were inadvertently omitted. I therefore recognize them as parties to the motion.

was not included as a defendant in the SAC. *Id.* In their motion, defendants raise a series of

arguments under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), including that no

federal claim is stated, that the claims are barred by the *Rooker-Feldman* doctrine, that Al-

Farouk's claims are insufficiently pled, that the complaint is subject to claim preclusion and

issue preclusion, and that the defendants are subject to qualified immunity. *Id.* Defendants

separately request judicial notice under Federal Rule of Evidence 201 of a series of judicial

records from two prior actions in the state courts of Nevada (Case Nos. A-22-846800-W and A-

22-857898-J). Request for jud. notice, ECF No. 26.[4] Al-Farouk filed a response in opposition to

the motion to dismiss. Opp'n, ECF No. 35. Defendants replied. Reply, ECF No. 38. Several days

after the reply, Al-Farouk filed a motion to amend her response. ECF No. 39. She then filed her

amended response several weeks later, despite not having been granted leave from the court.

ECF No. 43. I nonetheless granted her motion (ECF No. 46) and permitted defendants to submit

an additional reply, which they did (ECF No. 47). Because I find that Al-Farouk's claims against

the individual defendants have not been adequately pled, and her claims against Nevada and

DETR ESD are precluded, I grant defendants' motion to dismiss.

I.    **Background**[5]

Al-Farouk filed a claim for Pandemic Unemployment Insurance (PUA) with Nevada's

DETR in summer 2020. ECF No. 9 at 8. She received a "Monetary Determination confirming

eligibility pursuant to Section 2102 of the CARES Act of 2020 applicable federal regulations at

20 CFR, Part 625" on July 31, 2020. *Id.* Her demonstration of eligibility was based on "self-

certification, income verification in the form of 1099, client bank account payment report, tax

filings Identity verification in the form of front and back copies of Nevada drivers license along

---

[4] I grant defendants' request for judicial notice of the order denying Al-Farouk's petition for judicial review, the answer to the petition for judicial review, Al-Farouk's opening brief in support of her petition for judicial review, Al-Farouk's petition for judicial review, and Al-Farouk's petition for writ of mandamus. ECF No. 26; *see Intri-Plex Techs. Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). I also consider the documents attached to Al-Farouk's complaint as exhibits.

[5] Unless otherwise noted, the court only cites to Al-Farouk's SAC (ECF No. 9) to provide context to this action, not to indicate a finding of fact.

with a picture of Plaintiff holding drivers license, social security card, Medicare card, bank account statements, . . . utility bills[,]" and a letter from her client confirming separation due to COVID-19 pandemic. *Id.*

In February and March 2021, having not heard anything from DETR, Al-Farouk contacted Former Nevada Governor Steve Sisolak and Congressman Steven Horsford seeking resolution of her claims. *Id.* at 9; Pl.'s Ex. 10, ECF No. 9-1 at 31–33. Al-Farouk also contacted Lynda Parven, "Administrator, and of the Office of the Administration[,]" in March 2021 and received no response. ECF No. 9 at 9; ECF No. 9-1 at 31–33. She alleges that Parven, "acting under color of law, was a party to Plaintiff's legal complaints and pursued legal defense rather than resolution of payment of valid claim." ECF No. 9 at 9.

Al-Farouk did not hear anything following the initial determination until March 27, 2021, at which time she was told she had forty-eight hours to provide proof of her 2019 wages, proof of "how you are COVID affected and how that relates to you being unemployed," and a copy of her bank statement. ECF No. 9 at 8; Pl.'s Ex. 4, ECF No. 9-1 at 17. Al-Farouk was told that if she did not respond within forty-eight hours, "a determination will be made based on the information we have on file." ECF No. 9-1 at 17. Al-Farouk does not allege that she submitted the requested information in the forty-eight-hour window.

Benefits were denied on March 31, 2021. ECF No. 9 at 8; Pl.'s Ex. 5, ECF No. 9-1 at 18. The benefits denial letter stated that Al-Farouk failed to show that her "employment separation is due to the COVID-19 pandemic" and noted that she had the right to appeal the denial. ECF No. 9-1 at 19. Al-Farouk appealed the benefits denial the same day, stating that "[d]enial is nonspecific and states I don't qualify with no mention of which qualification I am lacking." ECF No. 9 at 8; Pl.'s Ex. 6, ECF No. 9-1 at 21–23. She did not hear back regarding her appeal until August 13, 2021, when she was again given forty-eight hours to attach a current utility bill and all pages of her 2019 and 2020 taxes. ECF No. 9 at 8; Pl.'s Ex. 7, ECF No. 9-1 at 25. Al-Farouk was told that if she did not respond within forty-eight hours, "a determination will be made based on

1   the information we have on file." ECF No. 9-1 at 25. Al-Farouk again does not allege that she

2   submitted the requested information in the forty-eight-hour window. On January 13, 2022, Al-

3   Farouk received a "Notice of Invalid Appeal" stating that "[a]fter reviewing the appeal, it has

4   been determined this appeal is invalid because you are making a statement and did not provide a

5   specific reason for filing an appeal on the non-monetary determination." ECF No. 9 at 9; Pl.'s Ex.

6   9, ECF No. 9-1 at 29.

7           On January 18, 2022, Al-Farouk filed a petition for a writ of mandamus in Nevada state

8   court. ECF No. 9 at 9. Following the invalid appeal determination, DETR scheduled a hearing

9   for March 9, 2022. *Id.* Al-Farouk states that she declined participation "as legal action was under

10  way and under the assumption that administrative failures constituted a default." *Id.* "[T]he

11  Judge in the Writ [of Mandamus] Petition forced Plaintiff in his Order to exhaust all of DETR

12  administrative instruments, including an appeals hearing, next level appeal to the DETR Board,

13  and Judicial Review." *Id.*

14          She accuses writ of mandamus respondents Weiss and Ford, who sought a motion for

15  reconsideration/rehearing in that action, of "committing fraud in defense of denial of benefits"

16  because their motion stated "Petitioner was deemed ineligible for program benefits on March 30,

17  2021, due to failure to demonstrate genuine attachment to the Nevada labor market and/or that

18  her unemployment was related to or the result of the COVID-19 pandemic" because they "must

19  have been aware that their defense of 'Failure to Demonstrate attachment to Nevada labor

20  market', was false, fraudulent, and a fabricated assertion with no basis in unemployment law."

21  *Id.* at 9–10; Pl.'s Ex. 11, ECF No. 9-1 at 34. Al-Farouk takes exception to this statement

22  specifically, citing to a document she identifies as a "Special Masters Report Introduction and

23  guidance regarding 'Location'" which appears to be four pages from an introduction and one

24  page from far later in a 310-page filing by a special master in some unidentified legal context. Pl.'s

25  Ex. 12, ECF No. 9-1 at 38–42. The special master appears to have been an attorney, describing

26  that the special master is "grateful for the hard work and contributions of his colleagues and

                                                4

staff at Hutchison & Steffen, PLLC." *Id.* at 41. According to this otherwise-unidentified document:

> Claimants need not be in Nevada at the time of filing so long as they are able and available for work. Individuals must file for PUA in the state where he or she was working at the time of becoming unemployed, partially unemployed, or unable or unavailable to work because of a COVID-19 related reason listed in the CARES Act statute and the Department's guidance. If an individual worked in more than one state at the time, the individual may file in any of those states.

*Id.* at 42. She alleges that because the special master "met with DETR representatives in person and by phone[,]" defendants Ford and Weiss were aware of, and chose to ignore, the "[g]uidelines[.]" ECF No. 9 at 10; Pl.'s Ex. 13, ECF No. 9-1 at 44–45.

On July 27, 2022, Al-Farouk states that she attended an appeal hearing "forced by order of the Court" and at which defendant Ceballos served as appeal referee. ECF No. 9 at 10–11. She alleges that Ceballos "conducted a fraudulent hearing lacking a specific reason for denial to be vetted. Denial was broad and non-specific alleging Plaintiff did not 'meet the qualifications required by'" the CARES Act for PUA. *Id.* at 11. She states that the appeals process was nothing "but a fishing expedition in search of a reason to deny benefits" and that Ceballos, "acting under color of law, admitted to Plaintiff upon inquiry that he did not know which specific criteria was not met causing denial." *Id.* The exchange to which Al-Farouk refers appears as follows:

| Al-Farouk: | Can you tell me exactly which qualification or qualifications it is that I don't meet. |
|---|---|
| Ceballos: | So that's what we have this hearing for to determine if that disqualification was issued correctly or incorrectly. I can just read you the disqualification that's on file, which you already have. |
| Al-Farouk: | Yeah, no. I don't need you to do that. It was just that that was very broad. It was not specific. It said you don't meet the qualifications, but it never stated exactly which qualifications I did not meet. And it seems if though if I'm getting a notification that I'm not qualified, that there should be something on file saying exactly what I'm not -- why. What qualifications I didn't meet. So you're determining that now. At the time that I got that notice, there was actually no |

5

<blockquote>
determination on exactly which qualification I didn't meet. Am I understand that correctly?

Ceballos:   So it was issued by the claim center, so the claim's department.

Al-Farouk:   Oh, so you wouldn't know.

Ceballos:   Correct.
</blockquote>

Appeal hr'g tr., Pl.'s Ex. 14, ECF No. 9-1 at 49. The ultimate finding of the referee, made on August 5, 2022, was that Al-Farouk last worked on May 1, 2020. Appeal referee decision, Pl.'s Ex. 15, ECF No. 9-1 at 51–52. The rendered decision stated the following:

<blockquote>
The claimant testifies that she was working in Hawaii and in October of 2019 she had a family emergency, so she relocated to Nevada. She affirms she continued to work remotely from the state of Nevada, but she was performing services for the company that was located in the state of Hawaii. The claimant testifies that she was supposed to return to Hawaii, but due to the pandemic she was unable to return as planned. She eventually had to train her replacement, and she was let go as she was unable to relocate back to Hawaii. **Although the claimant resided in Nevada, the preponderance of evidence clearly establishes that the claimant's employment and job-attachment was in the state of Hawaii. The claimant did not have an attachment to the Nevada Labor Market therefore she did not experience job loss in Nevada.**
</blockquote>

*Id.* at 51 (emphasis added). The decision made no mention of due process. *See id.*

Al-Farouk then appealed the decision to the Nevada State PUA Board of Review, for which defendant Susich serves as chairperson, and the Board declined further review. ECF No. 9 at 11; Pl.'s Ex. 16, ECF No. 9-1 at 54–56.

After this denial again, Al-Farouk petitioned for judicial review of the decision in the Eighth Judicial District Court of Clark County, Nevada, before Judge Anna Albertson. ECF No. 9 at 11. In her opening brief, she repeatedly raised the issue of Fourteenth Amendment Due Process as a core element of her petition. Opening br., ECF No. 26-3 at 7, 9, 11, 13, 14, 16, 18. Her due process complaints largely arose out of the lengthy delays in the adjudication of her PUA. *See, e.g., id.* at 11 ("Claims Adjudicator violated . . . the Due Process Clause of the 14th Amendment by not acting promptly in disbursing PUA benefits . . . ."); *Id.* at 14 ("Appeals Adjudicator

violated . . . the Due Process Clause of the 14th Amendment due to the length of time that had

transpired when the hearing was scheduled."); *Id.* at 16 ("The appeals Referee Violated . . . Due

Process by Not scheduling a Hearing on Petitioner's appeal for more a year after the appeal."). In

the hearing before Judge Albertson, Fourteenth Amendment Due Process was only briefly

discussed. This included the following exchange:

> MS. AL-FAROUK: The only other thing I would ask Your Honor and your -- is in terms of -- in my opening brief. Even before we got to the referee, everything that was done before then, am I to understand that that has -- that has no consideration, the violation of 14th Amendment due process rights? The violation of even the chapter 612, the fact that my claim was in limbo for close to a year before anything happened and everything that happened, I had to force. So are those actions not addressed at all?
>
> THE COURT: I understand your frustration but what's before me today is a petition for judicial review, where I review the decision and decide it -- whether I'm --
>
> MS. AL-FAROUK: Oh, just the decision.
>
> THE COURT: Yeah, I don't get to review some of the other stuff that you put in front of me.

July 25, 2023 Jud. rev. hr'g tr., ECF No. 35-1 at 49. At other points, when Al-Farouk attempted to

introduce other information, Judge Albertson stated "I'm not allowed to review additional

information. I'm not allowed to take in additional information" and "[m]y job, as I look at these,

these are petitions for judicial review, is very limited. I'm limited to the record that's in front of

me. I don't get to review additional information." *Id.* at 46, 48.

Judge Albertson ultimately signed an order denying Al-Farouk's petition because

"whether she returned to Hawaii to work for the Hawaiian company or stayed in Nevada to

work for the Hawaiian company, there was never an attachment to the Nevada labor market."

ECF No. 9 at 11; Albertson order, Pl.'s Ex. 17, ECF No. 9-1 at 61. Fourteenth Amendment due

process was not mentioned in the order. *See* ECF No. 9-1 at 59–62. Al-Farouk does not pursue

claims against Judge Albertson but instead defendant Sarafina, the DETR attorney who

submitted the proposed order, for "repeat[ing] the false and baseless assertions of Referee
Ceballos, attorneys for DETR Weiss and Ford, 'failure to demonstrate attachment to the Nevada
Labor Market' in the decision to deny appeal." ECF No. 9 at 11. She states that Parven, Nelson,
and Sewell[6], as leaders of DETR, "have an oversight and fiduciary duty ensuring the Department
is in compliance with both State and Federal laws" but they "repeatedly disregarded
unemployment law and statutory mandates as a matter of policy as evidenced by a six-month
(6) backlog of current claims . . . despite the emergency unemployment assistance ending two
(2) years ago in September of 2021." *Id.* (citing "February 28, 2023 KLAS TV 8 News Now
interview with Director Sewell"). She alleges that Governor Lombardo has "an oversight and a
fiduciary duty to ensure all Agencies including DETR are in compliance with both State and
Federal laws." Al-Farouk did not appeal Judge Albertson's order. She states:

> Plaintiff did not pursue an appeal with the Supreme Court because she understood
> the next step after the Judicial Review was to return to the Court for the Writ
> Petition. This is what Plaintiff was told by Judge and should be reflected in the
> transcript of the last hearing. The Writ Petition confusing dismissal coming before
> the conclusion of the Judicial Review, left Plaintiff confused as to the next steps.
> The Plaintiff did not understand this to be an option and frankly was too
> emotionally exhausted to pursue further litigation, especially what is now known
> to be the deadline for filing.

ECF No. 35 at 4. Nowhere in the hearing transcript is appeal procedure discussed. *See* ECF No.
35-1. After thorough review, I also cannot find any language in the hearing transcript, from Judge
Albertson, opposing counsel, or Al-Farouk herself, suggesting that continued pursuit of the writ
of mandamus petition was Al-Farouk's recourse following Judge Alberton's denial.

Al-Farouk now brings claims against defendants under 42 U.S.C. § 1983 for violation of
her Fourteenth Amendment procedural due process rights for excessive delays in the
adjudication of her claims, pointing to the eight-month delay between her award of benefits, the
more-than-a-year wait before she was given a hearing on her appeal, and the email notifying her

---

[6] Although Al-Farouk refers to Sewell as "Thomas Sewell," the court will construe this as a scrivener's error and that she intended to make allegations against defendant Christopher Sewell. *See* ECF No. 9 at 11.

she had forty-eight hours to submit additional documentation. *Id.* at 12. She also alleges that DETR failed to follow its own protocol,[7] which ostensibly states:

> Individuals who have an existing PUA claim as of December 27, 2020, . . . and who receive PUA on or after December 27, 2020, must provide documentation within **90 days** of the application date or the date the individual is instructed to provide such documentation by the state agency (whichever date is later).

*Id.* at 8; Pl.'s Ex. 8, EF No. 9-1 at 27 (emphasis added). She argues she was denied due process because she was only given forty-eight hours to respond to the request for additional documentation, and ultimately had her claim denied. ECF No. 9 at 8. She also alleges that defendants failed to adhere to the mandate of the CARES Act in adjudicating their decision, which states that "[i]ndividuals must file for PUA in the state where he or she was working at the time of becoming unemployed, partially unemployed, or unable or unavailable to work because of a COVID-19 related reason listed in the CARES Act statute and the Department's guidance." *Id.* at 10, 12–13 (citing ECF No. 9-1 at 38–42). She also raises claims for negligence and fraud against defendants. *Id.* at 13–14.

Al-Farouk seeks the "maximum amount of monetary remedy available for damages that occurred under U.S. Code 42 1983," punitive damages in excess of $100,000, and $100,000.00 under Nevada's sovereign immunity waiver law (Nev. Rev. Stat. § 41.031) for unemployment insurance fraud and negligence. *Id.* at 14. Defendants, in their motion, argue that Al-Farouk's claims should be dismissed under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), as well as qualified immunity. ECF No. 25.

---

[7] The document to which Al-Farouk cites has the "EmployNV" heading and is marked from "POSTMASTER" and sent on April 23, 2021. Pl.'s Ex. 8, ECF No. 9-1 at 27. Although it is not clear to the court who produced this document or why, because its authenticity is not currently contested, the court will assume its validity and consider it. *Garrido v. Beall Corp.*, 2010 WL 5129699, at *1 (D. Or. Dec. 10, 2010) ("[A] district court may consider documents specifically referenced in the complaint, assuming the documents' authenticity is not contested." (citing *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1998))).

II.    Discussion

A.  Defendants' Fed. R. Civ. P. 12(b)(1) arguments

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction. Pursuant to 12(b)(1), a motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint fails to allege sufficient facts to establish jurisdiction. *See Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). In considering a 12(b)(1) motion, the court is not restricted to the face of the pleadings but may review any evidence to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

### 1.  *Al-Farouk asserts a federal claim.*

Defendants first assert that this court lacks jurisdiction over Al-Farouk's claims because Al-Farouk fails to assert a federal claim under *Gunn v. Minton*, 568 U.S. 251 (2013), which applied the *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005) ("*Grable*") test. Under the *Grable* test, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Grable*, 545 U.S. at 258.

#### a.  *The federal claim is necessarily raised.*

According to defendants, Al-Farouk's federal claim under 42 U.S.C. § 1983 has not been necessarily raised because her claim "is based on the denial of her eligibility for state-administered PUA benefits through the administrative and judicial processes of the State of Nevada, and not the violation of any federal constitutional right." ECF No. 25 at 5. They assert that the action she maintains is "a state-law dispute of *eligibility* determination disguised as a federal claim, and the Court lacks federal-question jurisdiction." *Id.* (emphasis in original). A federal issue is necessarily raised where a state-law claim hinges on its adjudication. *Gunn*, 568 U.S. at 258.

In her SAC, Al-Farouk states that her alleged property interest in the benefits was deprived because her "PUA benefits remained unpaid for eight months (8) before denial of benefits and have never been paid." ECF No. 9 at 12. Al-Farouk's claim for violations of the Fourteenth Amendment thus appear to be twofold. To the extent that she is seeking for this court to review her eligibility for benefits using § 1983, I agree with defendants that this is a state law claim and is not "necessarily raised." *See Watkins v. Consol. Eng'g Lab'ys Inc.*, 2015 WL 4545847, at *4 (D. Haw. July 27, 2015) (finding no state law issue was necessarily raised even though the claims were premised on § 1983). There is no remaining federal issue when it comes to her benefits, which were administered (and adjudicated) by the state. Therefore, I grant defendants' motion to dismiss to the extent that Al-Farouk is attempting to relitigate her benefits eligibility. Because amendment is futile, dismissal is granted with prejudice.

However, Al-Farouk's other claim—the length of time she waited for adjudication of her claims—potentially raises a Fourteenth Amendment due process issue independent entirely from the state law claim for benefits. The Supreme Court has recognized that "the possible length of wrongful deprivation of . . . benefits is an important factor in assessing the impact of official action on . . . private interests." *Fusari v. Steinberg*, 419 U.S. 379, 389 (1975). "Thus in *Fusari*, the Court found that excessive delay in the adjudication of claims for unemployment benefits, during which time benefits were withheld, could yield a deprivation in its own right regardless of whether benefits were ultimately restored." *Veterans for Common Sense v. Shinseki*, 644 F.3d 845, 873 (9th Cir. 2011), *opinion vacated on reh'g en banc*, 678 F.3d 1013 (9th Cir. 2012). In *Cleveland Board of Education v. Loudermill*, the Supreme Court reasoned that "[a]t some point, a delay in [a] post-termination hearing would become a constitutional violation," though that point had not been reached in that case. 470 U.S. 532, 547 (1985); *see also Barry v. Barchi*, 443 U.S. 55, 66 (1979) ("[I]t was necessary that Barchi be assured a prompt post-suspension hearing, one that would proceed and be concluded without appreciable delay. Because the statute as applied in this case was deficient in this respect, Barchi's suspension was constitutionally infirm under the Due Process

1  Clause of the Fourteenth Amendment."). Indeed, "at some point delay must ripen into

2  deprivation, because otherwise a suit alleging deprivation would forever be premature." *Schroeder*

3  *v. City of Chicago*, 927 F.2d 957, 960 (7th Cir. 1991). I thus find that Al-Farouk's § 1983 Fourteenth

4  Amendment due process claim is a necessarily raised federal issue.

5                                            *b.* *The remaining* Gunn *factors likewise support jurisdiction.*

6          Defendants assert that the federal issue is not "actually disputed" because Al-Farouk is

7  suing over denial of state unemployment benefits, that her "eligibility determination" is not a

8  "substantial" federal issue, and that exercising jurisdiction would disrupt the Federal-State

9  balance because "[e]nsuring that benefits are not paid to ineligible claimants is critically

10  important to the administration of the PUA program . . . ." ECF No. 25 at 6–8 (citing *Gunn*, 568

11  U.S. at 260 and *Grable*, 545 U.S. at 308). To the extent that Al-Farouk's Fourteenth Amendment

12  claim arises out of the substantial delays she faced, I disagree.

13          The Fourteenth Amendment Due Process Clause prohibits state action that deprives a

14  person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. Thus,

15  to state a claim under the Fourteenth Amendment, a plaintiff must show that it was state action

16  that deprived her of due process. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Apao v. Bank of*

17  *N.Y.*, 324 F.3d 1091, 1095 (9th Cir. 2003). The test for state action is "not state involvement, but

18  rather is significant state involvement." *Adams v. S. California First Nat. Bank*, 492 F.2d 324, 330, n.14

19  (9th Cir. 1974). Here, there is unquestionably state involvement, and defendants do not deny

20  this fact. *See* ECF No. 25 at 6 ("Plaintiff's claim under 42 U.S.C. § 1983 is . . . premised on . . .

21  dissatisfaction with the outcome of Nevada's adjudication of her benefits claim."). That federal

22  courts have federal question jurisdiction over Fourteenth Amendment due process claims is

23  hardly new law. In *Raymond v. Chicago Union Traction Co.*, 207 U.S. 20, 20 (1907), the Supreme

24  Court held that a claim arising out of the actions of a state entity that violated the provisions of

25  the Fourteenth Amendment "by taking property without due process of law and by failing to

26  give equal protection of the law, a federal question was presented 'beyond all controversy.'" *S.*

*California Tel. Co. v. Hopkins*, 13 F.2d 814, 818 (9th Cir. 1926), *aff'd sub nom. Hopkins v. S. Cal. Tel. Co.*, 275 U.S. 393 (1928) (quoting *Raymond*, 207 U.S. at 20). Although defendants insist that Al-Farouk's § 1983 claim is premised "on dissatisfaction with the outcome of Nevada's adjudication of her benefits claim," I find that she has sufficiently brought a separate claim under the Fourteenth Amendment for violation of due process due to the delays she faced.

Defendants also assert that Al-Farouk's claim would disrupt the Federal-State balance because "Nevada has already fully adjudicated Plaintiff's claims through its state administrative and judicial systems." ECF No. 25 at 8. As discussed at length below, I find that Al-Farouk's due process claim as to the delay was never decided on the merits.

Therefore, I find that *Gunn* and *Grable* are not applicable, and the federal question has been properly raised.

### 2. Al-Farouk's Fourteenth Amendment due process delay claims are not barred by the Rooker-Feldman *doctrine.*

Having determined that Al-Farouk's Fourteenth Amendment due process claim based on the delays in process is the only claim that remains, I turn and address defendants' arguments that the *Rooker-Feldman* doctrine applies here. The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] district court proceedings commenced and inviting [federal] district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "The *Rooker-Feldman* doctrine merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to" the U.S. Supreme Court. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002). "The doctrine has no application to judicial review of executive action, including determinations made by a state administrative agency." *Id.*

"It is a forbidden de facto appeal under *Rooker-Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court and seeks relief from the judgment of that court." *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003). "First, the federal plaintiff may complain of harm caused by a state court judgment that directly withholds a benefit from (or imposes a detriment on) the federal plaintiff, based on an allegedly erroneous ruling by that court." *Id.* "Second, the federal plaintiff may complain of a legal injury caused by a state court judgment, based on an allegedly erroneous legal ruling, in a case in which the federal plaintiff was one of the litigants." *Id.* "On the other hand, where the federal plaintiff does not complain of a legal injury caused by a state court judgment, but rather of a legal injury caused by an adverse party, *Rooker-Feldman* does not bar jurisdiction." *Id.* In essence, the *Rooker-Feldman* doctrine applies only in cases where the plaintiff, having lost in state court, seeks de facto appeal in federal court arguing that the state court decision was *wrong. See id.* at 1164; *Exxon Mobil Corp.*, 544 U.S. at 284 ("If the state-court decision was wrong, the [*Rooker*] Court explained, 'that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding.'" (quoting *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413, 415 (1923)).

Here, Al-Farouk's remaining claim is that her Fourteenth Amendment due process rights were violated by the length of delay in the ultimate adjudication of her benefits claim. Al-Farouk did present this argument to the state court, but the state court judge declared that she did not have jurisdiction to hear this claim, explaining that the only issue she could consider was the merits of Al-Farouk's appeal. *See* July 25, 2023 Jud. rev. hr'g tr., ECF No. 35-1 at 46, 48, 49. As I detail below, the state court *did* have the ability to consider Al-Farouk's Fourteenth Amendment due process claim. However, the *Rooker-Feldman* doctrine is inapplicable here because Al-Farouk, in her SAC, is not alleging that the Nevada district judge applied the law incorrectly—at least in regard to her due process claim arising out of the delays she faced. Instead, because the Nevada district judge only made a jurisdictional—and not a merits-based—decision on Al-Farouk's due process delay claim, Al-Farouk brings this claim anew, not as an appeal. Therefore, because Al-

Farouk is not seeking redress for a "legal wrong allegedly committed by the state court" as to this remaining issue, the *Rooker-Feldman* doctrine is inapplicable. *See Noel*, 341 F.3d at 1163.

### B. Defendants' Fed. R. Civ. P. 12(b)(6) arguments

The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal is appropriate under Rule 12(b)(6) when a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* However, pro se pleadings are liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Rule 15(a), a court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive of the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178 (1962).

1.  *Al-Farouk has not alleged sufficient facts to implicate the individual defendants.*

Al-Farouk's SAC raises claims against Parven, Nelson, Sewell, Susich, Sarafina, Ceballos, Weiss, Ford, and Lombardo. ECF No. 9 at 3–4. Defendants argue that Al-Farouk "has failed to plead a viable § 1983 claim . . . ." ECF No. 25 at 11–12. In her amended response, Al-Farouk uses much space to argue that she has valid claims under the Fourteenth Amendment but makes no argument that her claims against each individual defendant are sufficient. *See* ECF No. 43 at 4–5.

Her complaints against Parven in her individual capacity include that, as Administrator of the Office of Administration, Parven was "contacted via email in March of 2021, through the Office of Nevada Congressman Steven Horsford regarding Plaintiff's claim that was unpaid and not denied for any cause. There was no response by her or any representative from her office. . . . Parven acting under color of law, was a party to Plaintiff's legal complaints and pursued legal defense rather than resolution of payment of valid claim." ECF No. 9 at 9. Additionally, "Lynda Parven, Kristine Nelson, and Thomas Sewell in their positions of leadership for Nevada DETR have an oversight and fiduciary duty ensuring the Department is in compliance with both State and Federal laws" and, "acting under color of law . . . repeatedly disregarded unemployment law and statutory mandates as a matter of policy as evidenced by a six-month (6) backlog of current claims reported a February 28, 2023 KLAS TV 8 News Now interview with Director Sewell despite the emergency unemployment assistance ending two (2) years ago in September of 2021." *Id.* at 11–12. Even construing her claims against each of these defendants liberally, Al-Farouk has not sufficiently pled her claims against them with specificity. These allegations do not point to any actions that Parven, Nelson, or Sewell took that caused the repeated delays that Al-Farouk faced. Al-Farouk does not connect the dots between Parven receiving an email from Congressman Horsford and any actual authority or oversight that Parven had that resulted in the allegedly unconstitutional delays. That Parven "pursued legal defense" rather than paying Al-Farouk her claimed entitlements does not explain any more about Parven's alleged role in

16

delaying her claims. Likewise, the public interview with Sewell demonstrates only that there was—apparently—a six-month backlog of claims in 2023. Al-Farouk is not pursuing litigation on behalf of all people on the benefit claims waitlist in 2023. In fact, she is not pursuing litigation on behalf of *anybody* on the benefit claims waitlist in 2023. Al-Farouk sought benefits in 2020 and received a final determination in 2021. Her complaint does not provide even bare bones information to support a claim that Parven, Nelson, and Sewell were the cause of the repeated, allegedly unconstitutional delays. In fact, there are no allegations differentiating their individual involvement. Despite Parven and Nelson apparently having the same role at different times, Al-Farouk does not explain their individual roles in relation to the unconstitutional delays she alleges she suffered. Because Al-Farouk has not sufficiently pled her claims against Nelson, Parven, or Sewell, her claims against each are dismissed without prejudice.

Al-Farouk's claims against the other individuals likewise do not pass muster. As to Susich, Al-Farouk's only allegation is that, as "Chairperson of the Board of Review [he acted] under color of law affirm[ing] the false and baseless appeal denial of Referee Ceballos." *Id.* at 11. Seeing as this has nothing to do with her claim regarding delays in violation of her due process rights, Al-Farouk's claims against Susich are dismissed. Because I find that amendment to the claims against Susich would be futile, Al-Farouk's claims against him are dismissed with prejudice.

Al-Farouk's only statement regarding Sarafina is that "acting under color of law [she] repeated the false and baseless assertions of Referee Ceballos, attorneys for DETR Weiss and Ford, 'failure to demonstrate attachment to the Nevada Labor Market' in the decision to deny appeal." *Id.* Like with Susich, Al-Farouk provides no facts to establish how Sarafina violated Al-Farouk's Fourteenth Amendment due process right to have her benefits adjudicated and distributed without delays. Therefore, the claims against Sarafina are dismissed. Because I find that amendment to the claims against Sarafina would be futile, Al-Farouk's claims against her are dismissed with prejudice.

For Ceballos, Al-Farouk states that he, "acting under color of law conducted a fraudulent hearing lacking a specific reason for denial to be vetted. Denial was broad and non-specific alleging Plaintiff did not 'meet the qualifications required by the Coronavirus Aid, Relief, and Economic Security (CARES) Act of 2020 for Pandemic Unemployment Assistance.'" She accuses him of "repeat[ing] the false and baseless assertions of attorneys for DETR Weiss and Ford in his appeal decision of 'failure to demonstrate attachment to the Nevada Labor Market.'" *Id.* Al-Farouk's allegations about what occurred during the hearing with Ceballos are irrelevant to any claims about unconstitutional delays in processing her benefits. As discussed previously, because the Fourteenth Amendment due process claims regarding delays are the only claims that remain, Al-Farouk's claims against Ceballos are dismissed. Because I find that amendment to the claims against Ceballos would be futile, Al-Farouk's claims against him are dismissed with prejudice.

Al-Farouk alleges that Weiss and Ford, as "Attorneys representing DETR ESD acting under color of law defended Plaintiff's denial of benefits asserting Plaintiff's due process was not violated despite evidence to the contrary and fabricating a defense with no basis in law." *Id.* at 9. She asserts that they acted fraudulently in arguing that her failure to demonstrate an attachment to the Nevada labor market warranted denial of benefits, because CARES Act guidelines did not have such requirements, and both Weiss and Ford were aware of that. *Id.* at 10. Like with Ceballos, Al-Farouk's claims against Weiss and Ford center entirely around her benefit appeals process. There are no allegations that either was the cause of allegedly unconstitutional delays or were involved in those delays whatsoever. Therefore, Al-Farouk has not adequately pled her claims against either defendant, and the claims against both Weiss and Ford are dismissed. Because I find that amendment to the claims against Weiss and Ford would be futile, Al-Farouk's claims against him are dismissed with prejudice.

Al-Farouk's only allegation specific to Governor Lombardo is that he "as Governor and the Head of State Agencies has an oversight and a fiduciary duty to ensure all Agencies including

1  DETR are in compliance with both State and Federal laws." *Id.* at 12. Again, Al-Farouk provides

2  no specific allegations that point to Governor Lombardo having caused the delays,[8] having been

3  involved in the benefits disbursement process, or even that he knew of her claims to begin with.

4  Because her claims against Governor Lombardo lack any specificity, her claims against him are

5  dismissed.[9] Further, because Al-Farouk's due process claims arise from process delays that

6  occurred prior to Governor Lombardo's inauguration, I find that amendment would be futile and

7  dismiss her claim against him with prejudice.

8         Adhering to *DeSoto*, Al-Farouk's claims against Nelson, Parven, and Sewell are dismissed

9  without prejudice and with leave to amend. 957 F.2d at 658. Any amended complaint may only

10  address Al-Farouk's due process claims. Should Al-Farouk attempt to raise any other issue,

11  including objections to the denial of her benefits, the court will consider dismissing Al-Farouk's

12  amended complaint for failure to comply with this court's orders. *See Ferdik v. Bonzelet*, 963 F.2d

13  1258, 1260 (9th Cir. 1992), *as amended* (May 22, 1992) ("[T]he district court may dismiss an action

14  for failure to comply with any order of the court. (citing Fed. R. Civ. P. 41(b)); *see also Meador v.*

15  *CCI Tehachapi*, 336 F. App'x 734, 735 (9th Cir. 2009). Al-Farouk's claims against Susich, Sarafina,

16  Ceballos, Weiss, Ford, and Lombardo are dismissed with prejudice.

17         2.  *Al-Farouk's Fourteenth Amendment claim arising out of the delays in*
18              *her process is precluded as to defendants State of Nevada and DETR*
            *ESD.*

19         Having already established that Al-Farouk's Fourteenth Amendment due process claim

20  based on the delays in process is the only claim that remains, I further find that this remaining

21  claim is precluded against those parties involved in the prior state action, as well as those

22  privity with those parties in the prior action.

23

24  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

[8] The court takes judicial notice that Governor Lombardo was not elected as Governor until 2022 and
25  was not sworn-in until January of 2023.

[9] Because I find that Al-Farouk has not presented sufficient factual material to state her claims against
26  the individual defendants, I do not address preclusion, estoppel, or qualified immunity as to these
defendants.

When a party asserts the preclusive effect of a state court judgment, 28 U.S.C. § 1738 requires that a federal court give a state court judgment the same full faith and credit as that judgment would receive under the law of the state in which the judgment was rendered. *Exxon Mobil Corp.*, 544 U.S. at 293; *Maldonado v. Harris*, 370 F.3d 945, 951 (9th Cir. 2004). Claim preclusion bars relitigation of all claims that "could have been raised in a prior action." *Holcombe*, 477 F.3d at 1097. A plaintiff cannot avoid preclusion by merely alleging conduct by the defendant not alleged in the prior action, or by pleading a new legal theory. *See McClain v. Apodaca*, 793 F.2d 1031, 1034 (9th Cir. 1986). Although claim preclusion is an affirmative defense, a Rule 12(b)(6) motion is an appropriate motion in which to raise these defenses when the defenses raise no disputed issues of fact. *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). The "rules of claim preclusion apply equally to § 1983 actions in federal courts." *Garcia v. Bostic*, 818 F. App'x 686, 689 (9th Cir. 2020) (citing *Allen v. McCurry*, 449 U.S. 90, 98 (1980)).

Under Nevada law, claim preclusion applies when "(1) the parties or their privies are the same, (2) the final judgment is valid, and (3) the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case." *Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008) (en banc) (citing *Univ. of Nevada v. Tarkanian*, 879 P.2d 1180, 1192 (Nev. 1994), *holding modified by Exec. Mgmt., Ltd. v. Ticor Title Ins. Co.*, 963 P.2d 465 (Nev. 1998) ("The modern view is that claim preclusion embraces all grounds of recovery that were asserted in a suit, as well as those that could have been asserted.")).

### a. Al-Farouk seeks judgment against the same parties or their privies.

To analyze the "same parties or their privies" question, the Supreme Court of Nevada in *Alcantara ex rel. Alcantara v. Wal-Mart Stores, Inc.*, 321 P.3d 912 (Nev. 2014), adopted the elements of Section 41 of the Restatement (Second) of Judgments. *Alcantara*, 321 P.3d at 917. Under Section 41 of the Restatement (Second) of Judgments, a person not named in the original action may still be considered in privity where the party is (b) an individual vested with authority to represent

another in litigation, and (d) an official or agency vested by law with the authority to represent the interests of a person. *See* Restatement (Second) of Judgments §§ 41(1)(b), 41(1)(d) (1982).

In her Nevada administrative appeal, Al-Farouk maintained her administrative appeal against the ESD, Lynda Parven in her official capacity, and Thomas Susich in his official capacity.[10] *Al-Farouk v. State of Nevada*, No. A-22-857898-J (Nev. Dist. Ct., Sept. 3, 2022). In the SAC, Al-Farouk sues: DETR ESD; Lynda Parven; Thomas Susich; Kristine K. Nelson; Christopher Sewell; Jen Sarafina; Jorge Ceballos; Todd Weiss; Attorney General Aaron Ford; Governor Joe Lombardo; and the State of Nevada. ECF No. 9 at 6, 12–15. For the reasons described above, Al-Farouk cannot maintain this action against Parvin, Nelson, Sewell, Susich, Lombardo, Ford, Weiss, Sarafina, or Ceballos. Therefore, her only claims remaining are those against the State of Nevada and the DETR ESD.

ESD, DETR ESD, and the State of Nevada are on equal footing for purposes of privity in claim preclusion. *See Cohen v. Whitley*, 2021 WL 1553814, at *6 (D. Nev. Apr. 20, 2021) (noting that DETR is an arm of the state of Nevada); *Hamer v. Nev. Bureau of Vocational Rehab. Emp. & Training*, 2016 WL 721369, at *2 (D. Nev. Jan. 21, 2016) (describing a branch of DETR as an "arm of the state"). Therefore, this action is maintained against the same defendants or their privies as the defendants in Al-Farouk's administrative appeal to the state court.

### b. *Final judgment in the state case was valid.*

For claim preclusion purposes, adjudication on the merits is a sufficient though not necessary condition for a determination that a valid final judgment exists. *Weddell v. Sharp*, 350 P.3d 80, 83 n.1 (Nev. 2015). Here, Al-Farouk's petition was denied, and the state court judge dismissed the case with prejudice.

---

[10] I note that, although I have already determined that Al-Farouk has not sufficiently stated her claims against Parven or Susich, neither Parven nor Susich would automatically be considered the "same parties." They were parties in their official capacities in state administrative appeal but here, Al-Farouk maintains her claims against them in their individual capacities. *See Giebel v. Sylvester*, 5 F. App'x 622, 624 (9th Cir. 2001) ("Because the individual defendants in the federal action . . . were not sued in their individual capacities in the state court action, res judicata does not preclude Giebel's federal action against them . . . in their individual capacities.").

In her amended response to the motion, Al-Farouk states:

> I view every action taken once the Department was made aware of its negligence and did not immediately pay the claim as illegitimate and a violation of the law. Including continued processing of the claim without payment, illegitimate. The requirement of the Judge that I complete all DETR administrative instruments, illegitimate and akin to requiring a victim to return to their abuser. The appeals hearing attended under duress after significant delay and in the scheduling of previous appeals, illegitimate on its face and in context of looking for a reason to deny, without any actual issue to vet. The Judicial Review was illegitimate, where the Judge went beyond the stated limitation, took instruction from the Defendant, and signed off on an Order for Dismissal totally different from the stated reason for dismissal in the transcript of the hearing.

ECF No. 43 at 15. However, Al-Farouk's personal objections and protests to the judicial procedure prescribed by law are irrelevant. The deadline for Al-Farouk to appeal the decision of the state court judge was "30 days after written notice of entry of the judgment or order appealed from is served." Nev. R. App. P. 4(a). Al-Farouk admits that she did not appeal the ruling of the state judge. ECF No. 35 at 4. Al-Farouk states that

> she understood the next step after the Judicial Review was to return to the Court for the Writ Petition. This is what Plaintiff was told by Judge and should be reflected in the transcript of the last hearing. The Writ Petition confusing dismissal coming before the conclusion of the Judicial Review, left Plaintiff confused as to the next steps. The Plaintiff did not understand this to be an option and frankly was too emotionally exhausted to pursue further litigation, especially what is now known to be the deadline for filing.

*Id.* Having reviewed the transcript of the hearing, I cannot find anywhere that Judge Albertson even so much as indicated to Al-Farouk what the next steps were. In choosing to pursue her claims pro se, Al-Farouk is still subject to the same rules of procedure as litigants who have counsel. *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987); *Hooper v. State*, 2009 WL 1471388, at *1 (Nev. 2009) (explaining that pro se litigant "would be held to the same rules and procedures as an attorney"). Even if Al-Farouk was incorrectly informed (or incorrectly assumed), this is not the basis of Al-Farouk's claim and it is not the place of this court to adjudicate whether Al-Farouk is entitled to have her state court appeal deadline tolled. It is uncontroverted that Al-

Farouk had the right to appeal the state court's determination. *See* Nev. Rev. Stat. § 233B.150

("An aggrieved party may obtain a review of any final judgment of the district court by appeal to

the appellate court of competent jurisdiction pursuant to the rules fixed by the Supreme Court

pursuant to Section 4 of Article 6 of the Nevada Constitution. The appeal shall be taken as in

other civil cases."). Because Al-Farouk failed to do so, Judge Albertson's decision, as reflected in

the hearing record and the order, is valid and final.

### c.  *This action is based on the same claims that were or could have been brought in Nevada state court.*

In her opening brief in support of judicial review to the Nevada district court, Al-Farouk

repeatedly referenced claims arising out of Fourteenth Amendment due process, pointing to the

delays in particular as one of the focal points of her claims. ECF No. 26-3 at 7, 9, 11, 13, 14, 16, 18.

She then sought to discuss the issue during the hearing before Judge Albertson. *See* ECF No. 35-1

at 49. I find that this issue was raised at the state court level. However, Judge Albertson told Al-

Farouk:

> I understand your frustration but what's before me today is a petition for judicial
> review, where I review the decision and decide it . . . . I don't get to review some of
> the other stuff that you put in front of me. That's . . . maybe you and Ms. Sarafina
> feel otherwise but it's my position that I'm very limited on these petitions for
> judicial reviews, where essentially I can remand it for some kind of reason, which
> means I sent it back, okay, and I am to state the reason for doing that. . . . I don't
> think this was a [sic] effort to deny you rights but even if it was, . . . I don't think
>
> that I'm the proper avenue to explore that. I don't think a petition for judicial
> review is the proper avenue to explore that. But I'm happy to let you put whatever
> you want to put on the record.

*Id.* at 49–50. Neither Sarafina nor Al-Farouk disagreed with Judge Albertson's statement. *See id.*

at 50. The issue was not brought up again and due process was not mentioned in the order the

judge ultimately signed.

According to the laws of the State of Nevada, Al-Farouk's due process claims should have

been considered in the state court. When a state court is reviewing an agency's decision, "[i]n

cases concerning alleged irregularities in procedure before an agency that are not shown in the

record, the court may receive evidence concerning the irregularities." Nev. Rev. Stat. § 233B.135.

Additionally,

> [t]he court may remand or affirm the final decision or set it aside in whole or in part if substantial rights of the petitioner have been prejudiced because the final decision of the agency is:
>
> > **(a) In violation of constitutional or statutory provisions;**
> >
> > (b) In excess of the statutory authority of the agency;
> >
> > **(c) Made upon unlawful procedure;**
> >
> > **(d) Affected by other error of law;**
> >
> > (e) Clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or
> >
> > (f) Arbitrary or capricious or characterized by abuse of discretion.

*Id.* at 233B.135(3) (emphasis added). Al-Farouk argued repeatedly that the process that ultimately led to the denial of benefits amounted to an unconstitutional deprivation of her right to due process. This may be considered "irregularities in procedure before [the] agency," or, in the alternative, argument that the final agency decision was "in violation of constitutional . . . provisions," "made upon unlawful procedure," or, at the very least "affected by other error of law[.]" Nev. Rev. Stat. § 233B.135. Al-Farouk's statements, between her opening brief and her oral argument, were unequivocal that she sought for the district court to review the record for violations of her Fourteenth Amendment due process rights. Based on a reading of the Nevada law, it appears the state district judge erred in refusing to consider Al-Farouk's constitutional arguments.

The Ninth Circuit has clearly ruled that constitutional claims not brought on judicial review of administrative rulings as permitted under section 233B.135(3)(a) are precluded. *See Holcombe v. Hosmer*, 477 F.3d 1094, 1099–100 (9th Cir. 2007) ("Holcombe's allegations concerning her § 1983 claims are based on the same set of facts as her claims of wrongful termination

litigated before the Nevada State Personnel Commission and affirmed by the Nevada state court. Therefore, under Nevada law, her § 1983 claims are precluded, and the district court properly dismissed Holcombe's claims."). Here, because I find that Al-Farouk *did* raise these issues on judicial review at the district court, this is not in dispute.

However, the question remains whether the district court's error, and Al-Farouk's failure to *appeal* the erroneous ruling, still makes her claims ones that were brought or could have been brought in state court. The Ninth Circuit looked at a similar situation in *Clark v. Yosemite Community College District*, 785 F.2d 781 (9th Cir. 1986). Reviewing the record, the Ninth Circuit explained that "[w]hen the state judge asked whether many of [the plaintiff's] claims were inappropriate for a mandamus action and might even be beyond the jurisdiction of the court in a mandamus proceeding, the [defendant], not surprisingly, agreed." *Id.* at 788 n.8. This was an erroneous decision by the state judge. *See id.* The plaintiff's "counsel argued against the court's erroneous surmise but did not press for a ruling." *Id.* According to the Ninth Circuit, if the plaintiff's counsel "had, and assuming that the court had continued in its misperception of the law, [the plaintiff] could have appealed the ruling and had it corrected in the state appellate court." *Id.* "Instead, [the plaintiff] [sought] to assert in federal court the same cause of action that the state court had left unresolved." *Id.* As the Ninth Circuit ultimately held: "The state court's failure to address the remainder of the cause of action involving interference with [the plaintiff's] teaching duties is attributable to [the plaintiff's] failure to move for a definite ruling or to appeal the judgment." *Id.* at 788.

Although not identical, the context around Al-Farouk's Fourteenth Amendment claims in state court is analogous. Like in *Clark*, the state judge refused to hear Al-Farouk's claims due to an error of law. In *Clark*, the plaintiff's counsel pushed back, but here, the state judge appeared to leave the door open for either party, including Al-Farouk, to interject and correct her. *See* ECF No. 35-1 at 49–50 ("[M]aybe you and Ms. Sarafina feel otherwise but it's my position that I'm very limited on these petitions for judicial reviews . . . ."). The Ninth Circuit

states that either pushing for a ruling on the issue or seeking appeal would have been appropriate remedies. *Clark*, 785 F.2d at 788. Here, Al-Farouk could have pushed back and could have appealed but did neither.

Al-Farouk avers that she did not know she could appeal and gives no indication from her filings that she understood the district judge's statements about being unable to hear the Fourteenth Amendment claims to be in error. She also acknowledges her exhaustion with this process. ECF No. 35 at 4. As stated previously, though, pro se litigants are subject to the same rules and procedure as litigants with counsel. *King*, 814 F.2d at 567; *Hooper*, 2009 WL 1471388, at *1. I find, therefore, that Al-Farouk's claim was brought up in front of the state court judge, and, although it was wrongfully dismissed, it could have been brought on an appeal. Because that deadline to appeal has now passed, Al-Farouk's claims against Nevada and DETR ESD are precluded. Because the claims are precluded against these defendants, amendment would be futile and therefore they are dismissed with prejudice.

I do, however, acknowledge the difficulties Al-Farouk has faced attempting to navigate the legal process pro se. She has yet to receive an explanation as to why her PUA claims were delayed for so long. The procedural morass Al-Farouk has entered—between the writ of mandamus, the administrative appeals process, the state court judicial review, and the present action—would be difficult for even experienced lawyers. This recognition does not and cannot change my application of the law to the facts of this case.

**III.    Conclusion**

IT IS HEREBY ORDERED that defendants' motions to dismiss **[ECF No. 25] is GRANTED**.

IT IS FURTHER ORDERED that all Al-Farouk's claims against defendants that arise out of the allegedly wrongful adjudication of her PUA benefits are **DENIED with prejudice**.

IT IS FURTHER ORDERED that Al-Farouk's Fourteenth Amendment due process claims against defendants State of Nevada and DETR ESD that arise out of the delays in the processing of her benefits decisions are **DENIED with prejudice**.

IT IS FURTHER ORDERED that Al-Farouk's Fourteenth Amendment due process claims against defendants Ceballos, Susich, Sarafina, Ford, Weiss, and Lombardo are **DENIED with prejudice**.

IT IS FURTHER ORDERED that Al-Farouk's Fourteenth Amendment due process claims against defendants Nelson, Parven, and Sewell are **DENIED without prejudice and with leave to amend**. If Al-Farouk chooses to amend, a third amended complaint must be filed by May 8, 2025. Any amended complaint may only address Al-Farouk's due process claims. Should Al-Farouk attempt to raise any other issue, including objections to the denial of her benefits, the court will consider dismissing Al-Farouk's amended complaint for failure to comply with this court's orders. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992), *as amended* (May 22, 1992) ("[T]he district court may dismiss an action for failure to comply with any order of the court." (citing Fed. R. Civ. P. 41(b)).

IT IS FURTHER ORDERED that defendants' request for judicial notice **[ECF No. 26] is GRANTED**.

IT IS FURTHER ORDERED that defendant Ceballos's motion for joinder **[ECF No. 33] is GRANTED**.

Dated: April 17, 2025

Cristina D. Silva
United States District Judge